**764**

**UNITED STATES of America,
Plaintiff,**

v.

**Grant FOSTER et al., Defendants.**

**Civ. No. 6534.**

District Court, Canal Zone,
Division Balboa.

Jan. 7, 1975.

Lester Engler, U. S. Dist. Atty., Balboa, Canal Zone, for plaintiff.

De Castro & Robles, Balboa, Canal Zone, for defendants.

CROWE, District Judge.

The Foster Construction (Panama) S. A. petitioned to redocket the case and to obtain a declaratory judgment further interpreting the stipulation of settlement entered into herein on April 30, 1970 and the judgment approving the stipulation and the supplemented judgment entered into on August 15, 1972. The issue being whether the petitioner was the owner of certain additional compensation due for work in Costa Rica from the United States Bureau of Public Roads or whether the funds were the property of the defendant, Grant Foster or companies owned or controlled by him, in particular, Foster Construction, C. A.

The case was redocketed and a hearing was had on the merits. From the evidence offered and the arguments of counsel the following findings of fact are made and conclusions of law reached.

## FINDINGS OF FACT

1. A joint venture known as "Foster-William Brothers Company" performed certain road construction in Costa Rica, which project was financed by the United States Bureau of Public Roads pursuant to contracts CPR 11–4285 Project 75–56–6, dated June 18, 1956, and contract CPR 11–5527, Project 75–56–6, dated November 29, 1956, between "Foster Construction, C. A." and Williams Brothers, as joint ventures, and the United States Bureau of Public Roads. The joint venture and one of its sub-contractors claimed additional compensation from the Bureau of Public Roads for work done in this road construction project. This claim for additional compensation was the subject of a lawsuit in the United States Court of Claims which was disposed of by a settlement in 1974. This settlement resulted in additional compensation being awarded to the joint venture on the said construction project. Inasmuch as the original joint venture of "Foster Construction, C. A. and William Brothers Company" was dissolved upon the completion

of the said project, the aforesaid additional compensation is to be divided among the two said joint venturers.

2. The Internal Revenue Service has taken the position that Foster Construction, C. A., which was a Venezuelan corporation, was liquidated by Grant Foster in approximately 1961, with Grant Foster being the last and sole stockholder of the said Venezuelan corporation on the date that it ceased operations, with the result that Grant Foster has succeeded as titleholder and beneficial owner of all property previously owned by Foster Construction, C. A. As a result of this position, the Internal Revenue Service took the position that Grant Foster was the owner of Foster Construction, C. A.'s share of the aforesaid additional compensation paid to the said joint venture.

3. On May 7, 1973, the Internal Revenue Service issued a levy on the attorney for the aforesaid joint venture, which attorney was representing the joint venture in a lawsuit in the United States Court of Claims pertaining to the additional compensation being sought. This levy was in anticipation that some additional compensation would be paid the joint venture in the near future either because of a court order or because of a settlement being reached among the parties. A settlement was reached by and between the joint venturers in the Court of Claims lawsuit concerning this additional compensation, whereby the United States paid $650,000 in additional compensation and the Court of Claims lawsuit was dismissed on or about November 5, 1974. After issuance of a check for $650,000 by the United States, a second levy was served on October 10, 1974, on Thomas F. Golden, in Tulsa, Oklahoma, an attorney for the aforesaid joint venture. This levy purported to seize Foster Construction, C. A.'s share of the aforesaid additional compensation due the joint venture, on the grounds that Foster Construction, C. A. was the nominee of Grant Foster. After payment of attorneys and a subcontractor, the joint venturer's share of this additional compensation is approximately $127,432.56. Further, this levy purported to seize said funds on the grounds that these funds were encumbered by tax liens outstanding against Grant Foster, which tax liens pertained to the years 1962, 1963 and 1964. The United States income tax liabilities asserted against Grant Foster for these years in this levy were in the amount of $609,738.24, plus statutory additions, for the year 1962; $96,781.24, plus statutory additions, for the year 1963; and $91,496.03, plus statutory additions, for the year 1964. In addition, these income tax liabilities were assessed against the taxpayer on January 25, 1971.

4. The Panamanian corporation known as "Foster Construction (Panama) S. A." has petitioned this Court to redocket the instant case on the grounds that the aforesaid levy by the Internal Revenue Service on the funds due the joint venture was a violation of the compromise agreement entered into in the instant case by and between the United States of America and Grant Foster on August 15, 1972, and approved by this Court on said date. The United States of America contends that the aforementioned suit settled the United States income tax liabilities it was asserting against Grant Foster for the years 1949 to 1955, inclusive, and, in addition, it settled the Government's claims that it was entitled to satisfy the tax liens securing the tax liabilities for the years 1949 to 1955, inclusive, from the property of the Panamanian company known as "Foster Construction (Panama) S. A." on the grounds that: Said company was the alter ego of Grant Foster; said company was not in fact a corporation, but rather a sole proprietorship owned and controlled by Grant Foster; that the property held in the name of the said Panamanian company had been fraudulently conveyed to it by Grant Foster; that the said Panamanian company was indebted to Grant Foster in an amount in excess of the amount due on the tax liabilities for the years 1949 to 1955, inclusive; and that Grant Foster

owned, managed and controlled said Panamanian company to such an extent that his creditors were entitled to satisfy their claims against Grant Foster from the assets of said company. The United States further contends that since Foster Construction, C. A. is a party to the joint venture which is entitled to the aforesaid additional compensation and since Foster Construction, C. A. is a defunct Venezuelan corporation whose last and only stockholder was Grant Foster, that Grant Foster is a person who is entitled to share in the aforesaid additional compensation due the joint venture, and that his share is therefore encumbered by the United States tax liens outstanding against Grant Foster for the years 1962, 1963 and 1964. To these contentions of the United States the Panamanian corporation known as "Foster Construction (Panama) S. A." responds that the Venezuelan corporation known as "Foster Construction, C. A." was not a party to the aforesaid joint venture, but rather, that a Costa Rican company known as "Foster Construction, S. A." was the actual party to the aforesaid joint venture, and since this Costa Rican corporation is a corporate predecessor to the Panamanian corporation known as "Foster Construction (Panama), S. A.", aforesaid compromise agreement entered into in this case on August 15, 1972, precludes the United States Government from seizing the funds in question. The Panamanian corporation admits that the name appearing on the aforesaid United States Bureau of Public Roads contract reads Foster Construction, C. A. and Grant Foster testified that no effort was made to change it as he didn't want to "rock the boat as we might be disqualified".

5. On June 18, 1956 and on November 29, 1956, construction contract identified respectively as Contract No. CPR 11–5527 and Contract No. 11–5527 pertaining to a portion of the Inter-American Highway in Costa Rica, known as Costa Rica Project 75–56–6 were executed on behalf of the United States by the Solicitor for the Commissioner of Public Roads, United States Department of Commerce and a joint venture entitled "Foster Construction, C. A. and William Brothers Company." These contracts called for the construction of a portion of the Inter-American Highway in Costa Rica for the respective sums of $9,607,-185.00 and $2,733,765.00 with said work to be started by July 2, 1956 and December 15, 1956, respectively, and to be completed by May 30, 1958. The bids submitted by the joint venture in seeking these contracts were in the names of "Foster Construction, C. A. and William Brothers Company." With the bids for these contracts each joint venturer submitted a financial statement and a statement of previous experience in the road construction industry. A financial statement was submitted to the U. S. Bureau of Public Roads in support of its bid for Contract CPR 11–4285 by the company known as "Foster Construction, C. A.", dated November 19, 1956, and this financial statement listed total assets in the amount of $5,604,472.24, all of which pertained to real property, construction equipment, and bank accounts owned by the Venezuelan corporation known as "Foster Construction, C. A." In fact, the bank accounts listed in this financial statement were located in Venezuela, and the real property listed was either in Venezuela, or was certain real property in Miami, Florida, known as "LeJeune Terminals". The accounts receivable listed on this financial statement in the main pertained to moneys due on contracts performed in Venezuela. With the bids for these contracts there was also submitted a statement of previous experience in the construction business by the joint venturer under the name "Foster Construction, C. A.", and this statement of experience listed only experience gained by the Venezuelan corporation known as "Foster Construction, C. A." in building projects in Venezuela from 1946 to 1956. Finally, with this experience statement there was also submitted statements by individual officers and key employees of the Venezue-

lan corporation known as "Foster Construction, C. A." which recounted their experience. In addition, all correspondence relative to these contracts between the joint venture and the United States Bureau of Public Roads was conducted under the names of Williams Brothers Company and Foster Construction, C. A." Further, the joint venture was sued by a subcontractor in the United States District Court for the District of Nevada for additional compensation regarding Contract CPR 11–5527, and the caption of this lawsuit was "United States of America for the use and benefit of Caribbean-Macomber-Brunzell, a Joint Venture, Plaintiff, v. Foster Construction, C. A. and William Brothers Company, a Joint Venture, also known as Foster-Williams Brothers, a Joint Venture, and The Travelers Indemnity Company, a Connecticut corporation, Defendants, and Glens Falls Insurance Company, a corporation, Third Party Defendant", Civil No. 1577. The joint venture in turn sued the United States Government in the United States Court of Claims for additional compensation on this contract, and this lawsuit was captioned "Foster Construction C. A. & Williams Brothers Co., A Joint Venture, Plaintiff v. The United States, Defendant," No. 417–66. Also submitted by the joint venture to the Bureau of Public Roads with the bid for the contract was a copy of the joint venture agreement executed by and between the joint venturers, and this agreement listed the joint venturers as "Foster Construction, C. A. and Williams Brothers Company".

6. The capital which was contributed to the joint venture composed of "Williams Brothers Company and Foster Construction, C. A." was contributed either by the Williams Brothers Company or by the Venezuelan company known as "Foster Construction, C. A." In fact, the Venezuelan corporation known as "Foster Construction, C. A." had bank accounts of the Venezuelan corporation known as "Foster Construction, C. A." in either the New York branch or the Caracas branch of the Bank of London & South America, Ltd. No separate or individual bank account was maintained with the Bank of London & South America, Ltd. in 1956 or 1957 in the name of "Foster Construction, S. A.", which was the Costa Rican company.

7. The equipment contributed to the joint venture was either the equipment of Williams Brothers Company or the equipment of the Venezuelan corporation known as "Foster Construction, C. A."

8. It appears that a Costa Rican corporation known as "Foster Construction, S. A." was the subject of articles of incorporation in San Jose, Costa Rica, on or about November 17, 1955. However, the books of original entry of this company contained no entries until December 31, 1962, and there is no record of it owning any assets or having any business activity prior to December 31, 1962. The stock of this Costa Rican corporation was purportedly issued on April 2, 1955, under the signature of E. F. Sullivan as president of the said company. However, Eugene Sullivan, who was formerly employed by Foster Construction, C. A., the Venezuelan corporation, has admitted that he signed said stock certificates as an accommodation to Grant Foster, but he has denied that he ever was an officer of this Costa Rican corporation or was ever employed by the said Costa Rican corporation, and he further alleges that he had left the employment of Foster Construction, C. A., a Venezuelan corporation, at the time that he affixed his signature to the stock certificates. Thus, it appears there was no validly issued stock of this Costa Rican corporation even outstanding in 1956 at the time the construction contract involved herein was executed.

9. It is contended by Foster Construction (Panama) S. A. that a Venezuelan corporation could not enter into the construction contract in question but that only a Costa Rican corporation could do so. Williams Brothers Company, however, is not a Costa Rican corporation but is a United States corporation. The Bureau of Public Roads has taken the position that it did not limit

this contract to merely Costa Rican corporations and United States corporations. Mariano Anderson, a Costa Rican attorney who represented the joint venture and various interests of Grant Foster in Costa Rica, rendered an opinion which stated that a foreign corporation could do business in Costa Rica if it had an agent with a general power of attorney registered in Costa Rica with an office in Costa Rica and agreed to submit itself to service of process and suit in Costa Rica.

10. The United States Bureau of Public Roads has also taken the position that the contract and the papers relative to said contract are clear and unambiguous in setting forth that Foster Construction, C. A. is a party to the contract in question. This Court agrees with that conclusion and further finds that Foster Construction, C. A., a Venezuelan corporation, is the party to the contract in question.

11. It appears that the Venezuelan corporation known as "Foster Construction, C. A." ceased operations and doing business sometime in 1961, and that at the time it ceased its operations Grant Foster was its sole stockholder.

12. Any of the following stated conclusions of law which are actually findings of fact or are mixed findings of fact and conclusions of law are incorporated herein as though specifically set forth in this finding of fact.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction to re-open this equity proceeding and to resolve this issue in dispute.

2. The contract in question is unambiguous and complete, and it is clear from the contract itself and from the papers executed in support of the contract that Foster Construction, C. A. is one of the joint venturers which is a party of this contract, and the Parol Evidence Rule prevents testimony from being offered to change the names of one of the parties to this contract from Foster Construction, C. A. to Foster Construction, S. A.

3. The joint venturer known as "Foster Construction, C. A." is a Venezuelan corporation which ceased doing business in approximately 1961 with the result that all assets or property owned by it at that time passed by operation of law to the ownership to its sole stockholder who, at the time of the termination of the company, was Grant Foster. One of the assets owned by the Venezuelan corporation known as "Foster Construction, C. A." at the time that it ceased doing business was its right to receive additional compensation on the contract in question as one of the joint venturers who was a party to said construction contract; and this right to receive additional compensation passed to the ownership of Grant Foster upon the dissolution of said Venezuelan corporation.

4. Accordingly, Grant Foster has a right to receive that portion of the additional compensation being paid by the United States Government on the construction contract in question which otherwise would have gone to Foster Construction, C. A. if said corporation had not ceased doing business.

5. There exist valid federal tax liens which encumber all property and rights to property owned by Grant Foster as security for payment of the outstanding tax liabilities due from Grant Foster to the United States Government for the years 1962, 1963 and 1964; and these tax liens encumber Grant Foster's right to share in the said additional compensation paid on said construction contract. Accordingly, it is concluded that the United States Government is entitled to partially satisfy the aforementioned outstanding tax liens by seizing and covering into the United States Treasury that portion of the additional compensation which would otherwise have gone to the Venezuelan corporation known as "Foster Construction, C. A."; and it is further concluded that the Panamanian corporation known as "Foster Construction

(Panama) S. A." is not entitled to share in these proceeds and that its motion and petition in this matter should be denied and dismissed.

6. Any of the foregoing Findings of Fact which are actually conclusions of law or are mixed questions of law and facts are incorporated in this Conclusion of Law as though specifically set forth.